**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

IN RE:  **DON TILTON**                                     Case No. 4:23-bk-12334
     **Debtor-in-Possession.**                                     **Chapter 11**

**DEBTOR'S PLAN OF REORGANIZATION**
**DATED AS OF AUGUST 30, 2024**

Comes Now, Don Tilton (the "**Debtor**"), and in accordance with the provisions of 11

U.S.C. §1129(a)(11), hereby proposes this Plan of Reorganization.

**ARTICLE I:   DEFINITIONS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME AND GOVERNING LAW**

**A.  SCOPE OF DEFINITIONS; RULES OF CONSTRUCTION**

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, the feminine, and the neuter. The word "including" is not a limiting term and shall be interpreted to mean "including, but not limited to". Any term used herein that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules (as defined below), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Unless the context requires otherwise, the following words and phrases shall have the meaning set forth below.

**B.  DEFINITIONS**

"**106 Viticole**" means real property located at 106 Viticole Place in Little Rock, Arkansas 72223 that the Debtor intends to use as his homestead.

"**Administrative Claim**" means a claim for payment of any administrative expense of a kind specified in §503(b) of the Bankruptcy Code and entitled to priority under §507(a)(1) of the Bankruptcy Code. Administrative claims include, but are not limited to, (a) any actual and necessary expense of preserving the Debtor's estate, (b) all allowances of compensation or reimbursement of expenses to the extent allowed by the Court pursuant to §§327 and 330 of the Bankruptcy Code, and (c) any fees or charges assessed against the Debtor's estate pursuant to 28 U.S.C. §123.

"**Administrative Claim Bar Date**" means thirty (30) days after the entry of the Confirmation Order, excepting therefrom Claims for Professional Fees.

"**Allowed Claim**" or "**Allowed Interest**" will mean a Claim against or interest in Debtor's estate: (a) a Claim that is not listed as contingent, unliquidated or disputed on the schedules of

Debtor; or (b) to the extent that a proof of claim or interest is timely filed as to which no party in interest, including the Debtor, files an objection; or (c) which is allowed by a Final Order.

"**Allowed Secured Claim**" or "**Secured Claim**" means an Allowed Claim for which the Claimant asserts and is determined by a Final Order to hold a valid perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to set off or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under §553 of the Bankruptcy Code and such Claim is allowed by Final Order, but in any event only to the extent of the value determined in accordance with §506(a) of the Bankruptcy Code, or the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff as the case may be.

"**Assets**" means all of the property of Debtor.

"**Bankruptcy Code**" or "**Code**" means the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, as amended, principally codified in 11 U.S.C. §101, et seq.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Eastern District of Arkansas, Little Rock Division, having jurisdiction over this proceeding, or in the event such Court ceases to exercise jurisdiction over this proceeding or with respect to any particular proceeding within or related to this case, such other court or adjunct thereof which exercises jurisdiction over this proceeding.

"**Bar Date**" means the date set by the Court as the last day for filing proofs of claim against the Debtor.

"**Cash**" means currency, checks, negotiable instruments and wire transfers of immediately available funds.

"**Causes of Action**" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

"**Claim**" has the same meaning as set forth in §101(5) of the Bankruptcy Code.

"**Claimant**" means the holder of a Claim.

"**Class**" means a group of Claims or interests which are substantially similar to each other, as classified pursuant to the Plan.

"**Confirmation Date**" means the date of the entry of the Confirmation Order.

"**Confirmation Order**" means the Final Order of the Bankruptcy Court confirming the Plan.

**"Creditors"** has the same meaning as set forth in §101(10) of the Bankruptcy Code.

**"Debtor"** means Don Tilton.

**"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order, (b) a Claim that is listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been filed by the Bar Date or Administrative Claims Bar Date, whichever is applicable, or deemed untimely filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable law, (c) a Claim that has not been listed in the Schedules or as to which no Proof of Claim has been filed or deemed timely filed pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, or (d) a Claim that is the subject of an objection filed with the Court and which objection has not been withdrawn or overruled by a Final Order of the Court.

**"Disclosure Statement"** means the Disclosure Statement prepared in connection with the Debtor's Plan of Reorganization dated August 30, 2024, pursuant to §1125 of the Bankruptcy Code, as the same may be modified or amended from time to time, including all exhibits and attachments thereto.

**"Disputed Claim"** means any Claim designated as disputed, contingent or unliquidated in Debtor's Schedules, or any Claim as to which an objection to the allowance thereof has been filed on or before the deadline for objecting to a Claim, and which objection has not been withdrawn or resolved by entry of a Final Order; provided, however, that the Court may estimate a Disputed Claim for purposes of allowance and distribution pursuant to §502(c) of the Bankruptcy Code.

**"Distributions"** shall mean the property (including payments) required by the Plan to be made to the holder of Allowed Claims or Interests.

**"Effective Date"** means the date upon which the Confirmation Order becomes a Final Order.

**"Filing Date"** means the date on which Debtor filed a petition for reorganization, being July 28, 2023.

**"Final Order"** means an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time for appeal has expired.

**"Hartsell Construction"** means Jack Hartsell Custom Home Builders, Inc. a/k/a Jack Hartsell Construction Co. a/k/a Jack Hartsell Construction, Inc.

**"Impaired"** shall have the meaning provided in §1124 of the Bankruptcy Code.

**"Plan"** or **"Plan of Reorganization"** means the Debtor's Plan of Reorganization and any and all modifications and/or amendments thereto.

**"Priority Claim"** means a Claim entitled to priority under §507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

"**Priority Tax Claim**" means a Claim entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

"**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

"**Proponent**" means the proponent of this Plan, which is the Debtor.

"**Professional**" means any professional employed in this Chapter 11 case pursuant to §§327, 328 or 1103 of the Bankruptcy Code and any other entity seeking compensation or reimbursement of expenses in connection with this Chapter 11 case pursuant to §503(b)(4) of the Bankruptcy Code.

"**Professional Fee Bar Date**" shall mean sixty (60) days after the Effective Date.

"**Professional Fees**" shall mean the Administrative Claims for compensation and reimbursement submitted pursuant to §§328, 330, 331 or 503(b) of the Bankruptcy Code for services rendered prior to and after the Effective Date to Persons: (a) employed pursuant to an order of the Bankruptcy Court under §§327, 328 or 1103 of the Bankruptcy Code; or (b) for whom compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to §503(b) of the Bankruptcy Code.

"**Scheduled Claims**" means those claims listed in the schedules of Debtor.

"**Schedules**" means the Schedules of Assets and Liabilities and any amendments thereto filed by the Debtor in accordance with §521(1) of the Bankruptcy Code.

"**Secured Claims Fund**" means the segregated interest-bearing account to be established by the Debtor on the Effective Date and under the control of and in the name of the Debtor. The Secured Claims Fund shall be used by the Debtor to make distributions to the holders of Allowed Secured Claims.

"**Tilton Trust**" means the Don A. Tilton Revocable Trust Dated January 24, 2002. Debtor is the sole Trustee, beneficiary and grantor of the Tilton Trust. The Tilton Trust holds a fee simple title to 106 Viticole.

"**Unsecured Claim**" or "**General Unsecured Claim**" means a Claim that is neither a Secured Claim, an Administrative Claim, a Priority Claim nor a Priority Tax Claim; provided, however, that the Court may estimate an Unsecured Claim for purposes of allowance and distribution pursuant to §502(c) of the Bankruptcy Code.

"**Unsecured Claims Fund**" means the segregated interest-bearing account to be established by the Debtor on the Effective Date and under the control of and in the name of the Debtor. The Unsecured Claims Fund shall be used by the Debtor to make distributions to the holders of Allowed Unsecured Claims.

"**Viticole Lawsuit**" means the lawsuit initiated by Simmons Bank against the Debtor that involves, *inter alia*, a determination of the validity, priority and extent of the liens held by

Simmons Bank, Robert Srygley, and Hartsell Construction against 106 Viticole that is pending in the Circuit Court of Pulaski County, Arkansas as Case No. 60CV-23-2390, including any appeals therefrom.

## C. RULES OF INTERPRETATION

For purposes of this Plan: (a) any reference in this Plan to a contract, instrument, release, indenture, order, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions and shall be in form and substance satisfactory to the Debtor; (b) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to this Plan; (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply. All exhibits and schedules to this Plan are incorporated into this Plan and shall be deemed to be included in, and made a part of, this Plan, as if fully set forth herein.

## D. COMPUTATION OF TIME

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II. PROVISIONS FOR TREATMENT OF ADMINISTRATIVE CLAIMS

2.1.   <u>Administrative Claims</u>. The Debtor will pay, in Cash, each Allowed Administrative Claim against the Debtor in full on the later of (a) the Effective Date (or as soon as practicable thereafter), (b) the date on which the Bankruptcy Court enters an order allowing such Administrative Claim, or (c) such other date to which the Debtor and the Holder of the Allowed Administrative Claim agree; provided, however, that Allowed Administrative Claim representing (a) obligations incurred in the ordinary course of business or assumed by the Debtor will be paid in full or performed by the Debtor in the ordinary course of business, consistent with past practice and (b) obligations incurred to Professionals for services provided through the Confirmation Date will be paid in accordance with the applicable Bankruptcy Court order approving the fees and expenses of each such Professional; provided further, however, that Administrative Claims filed after the Administrative Claim Bar Date will be forever barred and disallowed without further order of the Bankruptcy Court.  At this time, Debtor believes Administrative Claims are as follows:  unbilled and unpaid Professional Fees estimated at $40,000.00; and U.S. Trustee Quarterly Fees.

2.2.   <u>Requests for Payment of Administrative Claims</u>. All requests for payment of Administrative Claims (except for Professional Fees) must be filed in accordance with

§503(a) of the Bankruptcy Code by the Administrative Claims Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor.

2.3. <u>Final Application for Compensation and Reimbursement of Professionals' Fees and Expenses</u>. All applications for final allowance of compensation and reimbursement of Professionals' fees and expenses must be filed by the Professional Fee Bar Date and will be subject to the authorization and approval of the Bankruptcy Court. All such applications must comply with all terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees, including the U.S. Trustee Guidelines. Upon the Effective Date, any requirement that Professionals comply with §§327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate. If an objection to any such fees rendered prior to the Effective Date is filed with the Court, the Professional Fees shall not be paid until the Order allowing such fees, in whole or in part, is a Final Order.

2.4. <u>Full Settlement</u>. As more specifically set forth in, and without in any way limiting, Article XI of this Plan, the distributions provided for in and when paid pursuant to this section are in full settlement and release of all Administrative Claims.

## ARTICLE III: PROVISIONS FOR TREATMENT OF PRIORITY TAX CLAIMS.

3.1. <u>Priority Tax Claims</u>. This Class consists of the Priority Tax Claims of various governmental units for taxes entitled to priority under 11 U.S.C. §507(a)(8). This Class includes the Priority Tax Claim of the Arkansas Department of Finance and Administration, which was $17,708.18 as of the Filing Date, and the Priority Tax Claim of the Internal Revenue Service, which was $229,072.45 as of the Filing Date.

3.2. <u>Treatment</u>. These Claims cannot be paid in full on the Effective Date. Monthly payments shall be paid on these Claims, to the extent they are Allowed Claims, until paid in full according to the payment schedule set forth in Exhibit "A" attached hereto.

3.3. <u>Full Settlement</u>. As more specifically set forth in, and without in any way limiting, section Article XI of this Plan, the distributions provided for in and when paid pursuant to this section are in full settlement, release and discharge of all Priority Tax Claims.

## ARTICLE IV: CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to §§1122 and 1123(a) of the Bankruptcy Code, all Claims or interests are placed in a particular Class as set forth below. Administrative Claims and Priority Tax Claims of the kinds specified in §§507(a)(2) and 507(a)(8) of the Bankruptcy Code (set forth in Articles II and III above) have not been classified and are excluded from the following classes in accordance with §1123(a)(1) of the Bankruptcy Code. A Claim or interest is placed in a Class only to the extent that the Claim or interest falls within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or interest falls within the description of such other Class or Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

4.1.  <u>Class I (Simmons Bank)</u>. This class claim consists of the Secured Claim of Simmons Bank in the amount of $1,323,816.32 as of the Filing Date. This claim is secured by 106 Viticole. This claim amount may change upon the mutual agreement of the parties and in accordance with the terms of the original notes, as modified.

4.2.  <u>Class II (Robert Srygley)</u>. This class consists of the Secured Claim of Robert Srygley in the amount of $1,145,690.63 as of the Filing Date.  This claim is secured by 106 Viticole. This claim amount may change upon the mutual agreement of the parties.

4.3.  <u>Class III (Hartsell Construction)</u>.  This class consists of the Disputed Claim of Hartsell Construction in the amount of $1,834,047.54 as of the Filing Date. This claim is allegedly secured by 106 Viticole.  This claim amount may change upon the mutual agreement of the parties.

4.4.  <u>Class IV (Unsecured Claims)</u>. This class consists of all Unsecured Claims, including without limitation any deficiency balance for any unpaid Secured Claim by Final Order of this Court, and any Secured Claim that becomes an Allowed Unsecured Claim.  As of the date of this Plan, the Debtor estimates Claims in this Class to be as noted below, provided however, that Debtor reserves all rights to object to any claim and to require the holder of any Unsecured Claim to file a proof of claim to participate in a distribution pursuant to the terms of this Plan. Unsecured Claims, both Disputed and proposed Allowed Unsecured Claims, are as follows:

| Claimant | Disputed | Amount |
|---|---|---|
| Simmons Bank (Noted above) | | |
| Robert Srygley (Noted above) | | |
| Hartsell Construction (Noted above) | Disputed | |
| Sound Concepts, Inc. | Disputed | $59,000.00 |
| JP Morgan Chase Bank | | $1,172.00 |
| **Totals** | | $60,172.00 |

## ARTICLE V:  TREATMENT OF CLAIMS

As more specifically set forth herein, and without in any way limiting Article XI of this Plan, the treatment provided in this section are in full settlement and release of each Holder's Claim and all other Claims against the Debtor, if any, of such Holder directly or indirectly related to or arising out of the transactions, agreements or instruments upon which such Claim was based.  The payments will be made in the order of priorities listed.  The Classes set forth in this Article V are impaired and therefore entitled to vote on this Plan.

5.1.  <u>Class I (Simmons Bank)</u>.  Pursuant to this Court's Order entered on December 1, 2023 (Doc. #84), Simmons Bank was granted relief from the automatic stay to proceed with the Viticole Lawsuit.  As such, Class I is satisfied and entitled to exercise its state court remedies.  Notwithstanding the right of Class I to continue with foreclosure, within thirty (30) days from the entry of a final, non-appealable order concluding the Viticole Lawsuit, Class I will be paid as set forth in Section 6.8.1 below.   Although Class I may have a contingent deficiency claim as a Class IV Unsecured Claim upon the conclusion of the

Viticole Lawsuit and payment as set forth herein, the Debtor does not believe any deficiency will exist. Class I is impaired and therefore entitled to vote on this Plan.

5.2.   Class II (Robert Srygley).   Pursuant to this Court's Order entered on December 1, 2023 (Doc. #84), Robert Srygley was granted relief from the automatic stay to proceed with the Viticole Lawsuit.  As such, Class II is satisfied and entitled to exercise its state court remedies.  Notwithstanding the right of Class II to continue with foreclosure, within thirty (30) days from the entry of a final, non-appealable order concluding the Viticole Lawsuit, Class II will be paid as set forth in Section 6.8.1 below.  Debtor anticipates Class II may have a contingent deficiency claim as a Class IV Unsecured Claim upon the conclusion of the Viticole Lawsuit and payment as set forth herein.  As such, Class II is impaired and therefore entitled to vote on this Plan.

5.3.   Class III (Hartsell Construction).   The Claim in this Class is a Disputed Claim.  The Debtor believes this debt is subject to reduction through the Viticole Lawsuit.  Pursuant to this Court's Order entered on December 1, 2023 (Doc. #84), Hartsell Construction was granted relief from the automatic stay to proceed with a determination of its lien against 106 Viticole in the Viticole Lawsuit.  As such, Class III is satisfied and entitled to exercise its state court remedies.  Notwithstanding the right of Class III to continue with foreclosure, within thirty (30) days from the entry of a final, non-appealable order concluding the Viticole Lawsuit, Class III will be paid as set forth in Section 6.8.1 below.  Debtor anticipates Class III may have a contingent deficiency claim as a Class IV Unsecured Claim upon the conclusion of the Viticole Lawsuit and payment as set forth herein.  As such, Class III is impaired and therefore entitled to vote on this Plan.

5.4.   Class IV (Unsecured Claims).   All Allowed Claims in this Class will be paid as set forth in Section 6.8.2 below. Based on Debtor's Schedules, the total Unsecured Claims are $60,172.00, including total non-Disputed Unsecured Claims of $1,172.00, and would be paid in full over a ten- (10) year period with no interest.  The amount of Claims in this Class will vary depending on the outcome of litigation set forth in Section 6.4 below.  The Debtor may, in its sole discretion, pay any Allowed Claim that is $2,500.00 or less at any time after the Effective Date.  Class IV is impaired and therefore entitled to vote on this Plan.

## ARTICLE VI:  MEANS FOR IMPLEMENTATION AND FUNDING OF PLAN

6.1.   The Allowed Claims described above shall be paid from the net cash flow of the Debtor as described in the cash flow analysis identified as Exhibit "B" and attached hereto.

6.2.   Debtor's Income. Debtor expects to continue receiving income from the operation of his business, The Capitol Group, LLC, his retirement accounts, and Social Security.  Debtor will commit his available disposable income for a period of more than sixty (60) months after the Petition Date, as contemplated by §§1115 and 1129(15)(B) of the Bankruptcy Code. Debtor's Monthly Operating Reports detailing post-petition income and expenses are on file with the Court for creditor review. A financial projection of Debtor's post-petition income is attached as **Exhibit B** attached hereto.

6.3.   Operation of Business. After Confirmation, Debtor will continue to conduct his business operations, maintain the corporate records, books, and accounts of the entities in which he maintained pre-petition.  Debtor expects to receive a salary from the operation of his

business, The Capitol Group, LLC, in the amount of $200,000.00 per year, and potential distributions from The Capitol Group, LLC.

6.4.   <u>Preferences and Other Causes of Action</u>. Debtor has a duty to pursue any Causes of Action he might have under §§502, 544, 545 and 546 of the Bankruptcy Code, as well as any objection to claims, preference claims pursuant to §547, fraudulent transfer claims pursuant to §548, and any claims relating to post-petition transactions under §549 of the Bankruptcy Code.  In accordance with §1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, including Article XI of this Plan, the reorganized Debtor shall retain all Causes of Action, including Causes of Action that may exist under §§542, 544 through 550 and 558 of the Bankruptcy Code or under similar state laws. The reorganized Debtor, as representative of the Estate, will acquire the exclusive right to enforce, bring, release, settle or compromise, in its sole discretion, any and all Causes of Action of the Debtor not released pursuant to the terms of this Plan. The proceeds generated by successfully pursuing these Causes of Action will be used to fund this Plan.

6.4.1.   <u>Viticole Lawsuit</u>.   On April 3, 2023, Simmons Bank commenced the Viticole Lawsuit by filing its Verified Complaint against the Debtor, the Tilton Trust, and Robert Srygley. Robert Srygley asserts a lien against 106 Viticole by virtue of a judgment against the Debtor filed of record in Pulaski County, Arkansas on September 22, 2022.

On December 1, 2023, Simmons Bank, Robert Srygley and Hartsell Construction obtained relief from the automatic stay to pursue their claims against 106 Viticole through the Viticole Lawsuit.  On December 7, 2023, Simmons Bank filed its First Amended Complaint for the purpose of joining Hartsell Construction in the Viticole Lawsuit to determine the extent of Hartsell Construction's alleged materialmen's lien against 106 Viticole.

On December 18, 2023, Robert Srygley filed his Cross-Claim Petition against Hartsell Construction seeking a declaratory judgment that Hartsell Construction does not have a lien against 106 Viticole because Hartsell Construction failed to comply with the requirements for properly perfecting a materialmen's lien under Ark. Code Ann. §18-44-115.

On January 9, 2024, Hartsell Construction filed its Answer, Counterclaim and Cross-Claim seeking to liquidate its claims against the Debtor for the construction of 106 Viticole and advancement of funds to the Debtor in relation thereto, and a declaration that Hartsell Construction holds a first priority materialmen's lien against 106 Viticole.

On June 6, 2024, Debtor filed his Counter Complaint against Hartsell Construction seeking damages in excess of $3,200,000.00 and asserted the following causes of action:

- Negligence in the supervision and construction, including deficiencies in designing, planning and supervision of the project;

- Breach of the implied warranties of habitability, sound workmanship, and proper construction;

- Fraud, misrepresentation and deceit; and

- Conversion of items purchased by the Debtor that were to be used in the construction of 106 Viticole.

The parties have filed their responsive pleadings to the claims for relief. Simmons Bank has filed a Motion for Summary Judgment and Hartsell Construction has filed a Motion for Default Judgment against the Debtor. Both motions remain pending as of the date of this Plan, and a hearing date has not been set for either motion. Further, a trial date has not been set.

The ruling in the Viticole Lawsuit will have a significant impact on the Plan as it will determine the priority of liens against 106 Viticole and the amount of the three (3) largest Claims being paid under the Plan. A ruling in favor of the Debtor will provide the Debtor with additional funds to perform the terms of the Plan, although the Plan is not necessarily contingent on an award of damages in favor of the Debtor. Upon the conclusion of the Viticole Lawsuit, the Debtor will allocate any damages awarded to the Debtor, and collected, to fund this Plan.

6.4.2. Sound Concepts, Inc. Lawsuit. Since the Filing Date, the Debtor initiated a lawsuit against Sound Concepts, Inc. for breach of contract arising from a pre-petition contract between the Debtor and Sound Concepts, Inc. to provide alarm and other technical services for 106 Viticole. The Debtor seeks damages in the amount of $138,503.16 plus interest and attorney's fees. The Debtor expects Sound Concepts, Inc. will assert a defense to the Debtor's claims in this lawsuit. The ruling in this lawsuit will impact the amounts to be distributed to the Unsecured Claims in Class IV under this Plan.

6.5. Cash Flow Worksheet. Exhibit B illustrates why this Plan is feasible and includes a brief review of the history of the Debtor's finances, and averages of twelve- (12) month income and expenses and a slight overage to address miscellaneous unforeseen expenses. Exhibit C shows actual income and expenses since the Filing Date.

6.6. Vesting of Property. On the Effective Date, title to all property of the Debtor's Estate will pass to and vest in the reorganized Debtor, free and clear of all Claims, interests, liens, security interests, charges and other encumbrances (except as otherwise provided in this Plan). Confirmation of this Plan (subject to the occurrence of the Effective Date) will be binding, and the Debtor's debts will, without in any way limiting Article XI of this Plan, be discharged as provided in section 1141 of the Bankruptcy Code. From and after the Effective Date, the Debtor may operate his business and may use, acquire and dispose of property without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of the Plan.

6.7. Implementation. Pursuant to the Confirmation Order and upon confirmation of this Plan, the Debtor will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan. The Debtor shall be authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. On or before the Effective Date, the Debtor may file with the Bankruptcy Court the agreements and

documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan. The Debtor is hereby authorized to execute the agreements and documents and take such other actions as are necessary to effectuate the transactions provided for in this Plan, without the need for any required approvals, authorizations or consents.

6.8.  Creditor Payments. Upon Confirmation of this Plan, the Debtor will establish and maintain a separate interest-bearing account in a bank or other financial institution approved by the U.S. Trustee for each of the Secured Claims Fund and the Unsecured Claims Fund for the purpose of funding the payments to Allowed Secured Claims and Allowed Unsecured Claims, respectively, with the monies deposited therein to be paid to such Allowed Claims as set forth herein.

6.8.1.  Secured Claims. Within thirty (30) days from the entry of a final, non-appealable order concluding the Viticole Lawsuit, Debtor will pay the holder of an Allowed Secured Claim in Cash from the Secured Claims Fund to the extent of such Secured Claim and in the order of priority as determined in the Viticole Lawsuit. The remaining balance, if any, of a Secured Claim after payment from the Secured Claims Fund will be paid in full within twelve (12) months from the date of the first payment from the Secured Claims Fund. Alternatively, Debtor will surrender to the holders of any Allowed Secured Claims the collateral securing such Allowed Secured Claim in full satisfaction of such Claim. Debtor proposes to dedicate $6,000.00 per month for this purpose.

6.8.2.  Unsecured Claims. Allowed Unsecured Claims will receive periodic pro rata distributions based on Debtor's cash flow of a minimum of $100,000.00 over the life of the Plan by deferred Cash payments accruing interest at 0.00% per annum at the end of each calendar year. Debtor proposes to dedicate $1,050.00 per month for this purpose. The annual payment will be prorated based on the amount of each outstanding Allowed Claim. This Class will be in paid in ten (10) years, or less, from the Effective Date. In the event that the Court determines the Disputed Claims to be Allowed Claims, then the annual payment shall be increased by an amount sufficient to pay such Claims with all other terms remaining the same.

### ARTICLE VII:  LIOUIDTION ANALYSIS

7.1.  Debtor's liquidation analysis styled "Recovery Value" is attached hereto as Exhibit "D" and, when read in conjunction with the Plan, demonstrates creditors will receive more through the Plan than through a Chapter 7.

### ARTICLE VIII:  TREATMENT OF UNEXPIRED CONTRACTS OF DEBTOR

8.1.  All existing lease contracts, oral or written, of the Debtor listed in Debtor's Schedule G are hereby assumed under §365 of the Bankruptcy Code.

### ARTICLE IX:  PROVISIONS REGARDING DEFAULT IN PLAN

9.1.  Intentions. This Plan is intended to comprehensively address the Debtor's financial situation and effectively deal with all contingencies arising during this Case prior to the

Confirmation Date and the Effective Date. Further, it is not intended, nor shall it be necessary, unless the Court orders otherwise, that the Case be dismissed or converted to a Chapter 7 proceeding. If Debtor fails to meet any requirements set out in this Plan, or the Order of Confirmation, the Court, after notice and hearing, may grant moratoriums and/or extensions, or take any other action necessary to fulfill the intents and purposes of this Plan and the Bankruptcy Code.

9.2.    <u>Moratorium(s) and Extension(s)</u>. Upon application after notice to all Creditors whose Allowed Claim has not been satisfied in full at the time the request is made and hearing on an objection to such request, the Court may (and reserves jurisdiction to) grant moratorium(s) and extension(s) of the payments to Creditors in any of the classes of Claims for any reasonable period of time due to circumstances presently unforeseeable. Any request for or the granting of a moratorium or extension approved by the Court shall not be considered a default in the Plan.

**ARTICLE X:  ACCEPTANCE OR REJECTION OF THIS
PLAN OR CONSENT TO DIFFERENT TREATMENT**

10.1.   <u>Impairment of Classes of Claims</u>. All Classes of Claims are impaired under the Plan.

10.2.   <u>Each Impaired Class of Claims Entitled to Vote Separately</u>. Each impaired Class of Claims will be entitled to vote separately to accept or reject this Plan, unless otherwise prevented from voting by Court order.

10.3.   <u>Persons Entitled to Vote</u>. The holders of Allowed Claims in all Classes are entitled to vote on this Plan unless otherwise provided by Order of the Court.

10.4.   <u>Acceptance by a Class of Creditors</u>. Consistent with §1126(c) of the Bankruptcy Code and except as provided in §1126(e) of the Bankruptcy Code, a Class of Claims will have accepted this Plan if this Plan is accepted by holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject this Plan.

10.5.   <u>Cramdown</u>. In the event that any particular impaired Class of Claims or interests fails to accept, or is deemed to reject, this Plan in accordance with §§1126 and 1129(a) of the Bankruptcy Code, the Debtor requests that the Court confirm this Plan in accordance with §1129(b) of the Bankruptcy Code as to any such rejecting Class.

**ARTICLE XI:  DISCHARGE, INJUNCTIONS,
RELEASES AND SETTLEMENTS OF CLAIMS**

11.1.   <u>Discharge of the Debtor</u>. Effective as of the Confirmation Date (but subject to the occurrence of the Effective Date) and except as otherwise specifically provided in this Plan, the distributions and rights that are provided in this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of all Claims of any nature whatsoever against, liabilities of, Liens on, obligations of the Debtor or any of its assets or properties, whether known or unknown, and, except as otherwise provided herein or in the Confirmation Order, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims. Upon the Effective Date, the Debtor shall be deemed discharged and released under §1141(d)(1)(A) of the Bankruptcy

Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtor prior to the Effective Date and that arises from a termination of employment or a termination of any employee or retiree benefit program regardless of whether such termination occurred prior to or after the Confirmation Date, and all debts of the kind specified in §§501(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under §501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under §502 of the Bankruptcy Code, or (c) this holder of a Claim based upon such debt has accepted this Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor except as set forth in the Plan, subject to the Effective Date occurring.

11.2.  <u>Compromise and Settlements</u>.  Debtor shall have the power and authority to settle and compromise Claims with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

11.3.  <u>Injunction</u>. Except as otherwise provided in this Plan, Sections 11.1 of this Plan and this section will also act as an injunction against any person or entity commencing or continuing any action, employment of process, or act to collect, offset or recover any Claim, Interest or Cause of Action satisfied, released or discharged under this Plan. Notwithstanding the foregoing, such injunction shall not apply to the determination of the amount of Claims or priority of liens in the Viticole Lawsuit.

## ARTICLE XII:  PROVISIONS REGARDING THE DETERMINATION OF VALIDITY OF LIENS AND AMOUNT OF CLAIMS AND BAR DATES

12.1.  <u>Claims Review and Objections</u>. Notwithstanding anything contained herein, Debtor reserves the right to review all Claims and to object to and/or defend against all Claims in this Case not: 1) specified herein as an Allowed Claim or Allowed Secured Claim; or 2) subject to a settlement agreement approved under this Plan or outside the Plan by Final Order of the Court. No payments shall be made to the holder of any Disputed Claim until the Court has determined in what amount, if any, it is to be allowed as an Allowed Claim and a Final Order has been entered with respect thereto. The withholding of payment to the holder of a Disputed Claim shall not prevent payment to the holders of other Allowed Claims in the same Class as the Disputed Claim unless otherwise provided in the Plan.

Objections to Claims must be filed with the Court and served upon the Claimant prior to the expiration of ninety (90) days from the Effective Date, unless the Court extends such time, otherwise Claims will be an Allowed Claim. Prior to the expiration of thirty (30) days from the receipt of an objection, the Claimant, whose Claim has been objected to, must file with the Court and serve upon the objecting party a response. Failure to file a response within the thirty (30) day period will require the Court to enter an order against the non-responding Claimant, granting the relief requested in the objection.

12.2.  <u>Valuation of Secured Claims</u>. Notwithstanding anything contained herein to the contrary, the Debtor reserves the right to have the Claims of all Secured Creditors (other than Secured Creditors whose collateral value is stipulated to under this Plan or whose Claim is designated in the Plan as an Allowed Secured Claim), valued pursuant to §506 of the

Bankruptcy Code to determine the Secured and Unsecured portions. Secured Claims shall be valued after notice and hearing by the Court upon the motion of the Proponents of the Plan or the holder of a Secured Claim.

12.3. <u>Administrative Claims Bar Date</u>. Entry of the Confirmation Order will operate to establish an Administrative Claims Bar Date for Administrative Claims other than Professional Fees and Preserved Ordinary Course Administrative Claims. The Administrative Claims Bar Date, as defined in Section B of this Plan, shall be thirty (30) days after entry of the Confirmation Order. Holders of Administrative Claims, including, but not limited to, Claims by taxing authorities for taxes accruing but not paid on or after the Petition Date, may submit proofs of Claim on or before such Administrative Claims Bar Date. Failure to meet the Administrative Claims Bar Date will result in the Claim not being paid and being permanently barred.

## ARTICLE XIII:  EFFECTIVE DATE OF THE PLAN

13.1. <u>Effective Date</u>. The Effective Date of the Plan shall be a date not later than fourteen (14) days after the later of (a) the date on which the Confirmation Order shall have been entered, provided that if any stay should be entered with respect to the Confirmation Order, this time period shall commence on the date when such stay is vacated, (b) the date on which all conditions to the obligations of the Debtor to consummate the transactions contemplated hereunder shall have been satisfied or waived as notice by either party to the other. No stay of the Confirmation Order shall be obtained without a Court order and an appeal bond in an amount to be set by this Court or an appellate court of competent jurisdiction satisfactory with the Office of the U.S. Trustee sufficient to indemnify all Creditors from all ascertainable losses if the appeal is not successful.

## ARTICLE XIV:  RETENTION OF JURISDICTION

14.1. <u>Retention of Jurisdiction</u>. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain have exclusive jurisdiction of all matters arising out of, and related to the Case pursuant to, and for purposes of, §§105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction to:

14.1.1.  Determine any and all disputes relating to Administrative Expenses and Claims, including the allowance and amount thereof, and any right to setoff;

14.1.2.  Determine any and all disputes among creditors with respect to their Claims;

14.1.3.  Determine any and all objections to cure amounts required pursuant to Article IX of this Plan;

14.1.4.  Consider and allow any and all applications for compensation for professional services rendered and disbursements incurred up to and including the Confirmation Date in connection therewith;

14.1.5.  Determine any and all applications, motions, adversary proceedings and contested or litigated matters pending on the Effective Date and arising in or related to this Case or this Plan;

14.1.6.   Remedy any defect or omission or reconcile any inconsistency in this Plan or the Confirmation Order;

14.1.7.   Enforce the provisions of this Plan relating to the distributions to be made hereunder;

14.1.8.   Issue such orders, consistent with §1142 of the Bankruptcy Code, as may be necessary to effectuate the consummation and full and complete implementation of this Plan;

14.1.9.   Enforce and interpret any provisions of this Plan;

14.1.10.  Determine such other matters as may be set forth in the Confirmation Order or that may arise in connection with the implementation of this Plan;

14.1.11.  Determine the amounts allowable as Administrative Expenses pursuant to §503(b) of the Bankruptcy Code;

14.1.12.  Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and any agreements or documents necessary to effectuate the terms and conditions of this Plan, or any orders entered by the Bankruptcy Court during the pendency of the Case;

14.1.13.  Hear and determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtor after the Effective Date;

14.1.14.  Hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, any objections to the classification of any Claim and to allow, disallow or estimate any Disputed Claim in whole or in part;

14.1.15.  Hear and determine any issue for which this Plan or any document related to or ancillary thereto requires a Final Order of the Bankruptcy Court;

14.1.16.  Hear any other matter not inconsistent with the Bankruptcy Code; and

14.1.17.  Enter a final decree closing the Chapter 11 Case.

14.2.   <u>Consummation of Plan of Reorganization</u>. Upon the payment of all Allowed Claims as described above, the Plan will be deemed substantially consummated.

14.3.   <u>Final Decree</u>. At any time after the Effective Date the Debtor may move for a Final Decree closing the case.

## <u>ARTICLE XV:  CONDITIONS TO THE EFFECTIVE DATE</u>

15.1.   <u>Conditions to Effective Date</u>. The Plan shall not become effective and the Effective Date shall not occur unless and until:

15.1.1. The Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtor;

15.1.2. No stay of the Confirmation order shall be in effect at the time the other conditions set forth in this Section 15.1 are satisfied, or if permitted, waived.

## ARTICLE XVI: GENERAL PROVISIONS

16.1. <u>Binding Effect of Plan of Reorganization</u>. The rights, duties and obligations of any persons named or referred to in the Plan will be binding upon, and will inure to the benefit of the successors and assigns of, such person.

16.2. <u>Modifications of Plan</u>. The Plan may be modified in accordance with the provisions of the Bankruptcy Code and the applicable Bankruptcy Rules.

16.3. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal or state law is applicable, the rights, duties and obligations of the Debtor, any Creditor, and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with the internal laws of the State of Arkansas, without giving effect to choice of law provisions.

16.4. <u>Confirmation of Transaction</u>. All transactions, transfers or sale of Assets of Debtor contemplated by the Plan, whenever occurring, will be deemed confirmed as reasonable, necessary and integral components in the furtherance of the Plan and will not be taxed under any law imposing a stamp or a similar tax.

16.5. <u>Headings</u>. The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

16.6. <u>Notices</u>. Any notice required or permitted to be provided under the Plan shall be in writing and served by either: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; (c) reputable overnight courier service, freight prepaid; or (d) by telecopy or electronic transmission to be addressed as follows:

| | |
|---|---|
| If to Proponents of Plan: | J. Brad Moore |
| | Wetzel & Moore, P.A. |
| | 212 Center St., 10th Floor |
| | Little Rock, AR 72201 |
| If to the U.S. Trustee: | Joseph DiPietro, Staff Attorney |
| | Office of the Assistant U.S. Trustee |
| | 200 W. Capitol Ave., Ste. 1200 |
| | Little Rock, AR 72201 |

If hand delivered, such communication shall be deemed delivered upon actual receipt; if electronically transmitted pursuant to this Plan, such communication shall be deemed delivered by the next noon at point of arrival occurring on a Business Day following transmission.

16.7. <u>Severability</u>. If any provision of this Plan is found by the Court to be invalid, illegal or unenforceable or this Plan is found by the Court to be invalid, illegal or unenforceable or this Plan is not confirmable pursuant to §1129 of the Bankruptcy Code, the Court, at the request of Proponents of the Plan, shall have the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this

Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Respectfully Submitted,

By: _/s/ J. Brad Moore_____
    J. Brad Moore (AR Bar 2010197)
    **WETZEL & MOORE, P.A.**
    212 Center Street, 10th Floor
    Little Rock, AR 72201
    Phone: (501) 663-0535
    Fax:    (501) 372-1550
    Email: jbmoore@wetzelandmoore.com

# EXHIBIT "A"
## PAYMENT SCHEDULE

| Claimant | Claim Amount | Annual Interest | Number of Payments | Monthly Payment |
|---|---|---|---|---|
| Internal Revenue Service | $229,072.45 | 5.50% | 60 | $4,375.55 |
| *Arkansas Dept. of Finance | $17,708.18 | 5.50% | 60 | $338.25 |

# EXHIBIT "B"
## PROJECTED CASH FLOW ANALYSIS

# EXHIBIT "C"
## RECENT CASH FLOW ANALYSIS

### During Bankruptcy – Per Monthly Operating Reports

| | |
|---|---|
| Average Monthly Income | $ 28,400.17 |
| Average Monthly Expenses | $ 26,928.83 |
| **Monthly Net Cash Flow** | **$ 1,471.33** |

**Monthly Net Cash Flow $1,171.33 X 12 months = $ 17,656.00**

# EXHIBIT "D"
# <u>LIQUIDATION ANALYSIS</u>

### *Current Estimated Liquidation Value of*
### *Non-Exempt Assets As of July 28, 2023*

**Non-Exempt Assets**

| | | |
|---|---|---|
| a. | 2018 GMC Yukon XL | $ 32,550.00 |
| b. | Checking Account | $ 16,752.08 |
| c. | Security Deposit | $      850.00 |
| d. | Brokerage Account | $ 15,000.00 |
| e. | Jewelry | $ 16,825.00 |

***Total Assets at Liquidation Value***                    **$ 81,977.08**

Priority claims, excluding administrative expense claims      $286,780.63

Unsecured claims                                             $2,251,726.49

***Percentage of Claims Which Unsecured Creditors Would***      **0.00%**
***Receive Or Retain in a Chapter 7 Liquidation:***

***Percentage of Claims Which Unsecured Creditors Will***      **4.44%**
***Receive or Retain under the Plan:***

\* Includes estimated Unsecured Claim for bifurcated Secured Claims in the amount of $2,191,554.49.